Frank Kevin POOL, Appellant,

v.

Bill ARMONTROUT, Warden, Appellee.

No. 87–1464.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 13, 1988.

Decided July 26, 1988.

Rehearing and Rehearing En Banc
Denied Sept. 20, 1988.

Springfield Baldwin, St. Louis, Mo., for appellant.

Patrick L. King, Jefferson City, Mo., for appellee.

Before HEANEY and WOLLMAN, Circuit Judges, and ROSS, Senior Circuit Judge.

ROSS, Senior Circuit Judge.

Frank Kevin Pool appeals from the district court's[1] dismissal of his habeas corpus petition. For the reasons set forth below, we affirm.

## I.

In 1979, Pool pleaded guilty to first degree murder and was sentenced to life imprisonment. Pool was 15 years old at the time of the murder. In March 1980, Pool filed a motion for post-conviction relief in the Missouri state circuit court under Mo. R.Crim.P. 27.26. After an evidentiary hearing, Pool's Rule 27.26 motion ultimately was denied, and the Missouri Court of Appeals affirmed. *Pool v. State*, 670 S.W. 2d 210, 212 (Mo.Ct.App.1984) (per curiam).

In June 1981, Pool filed a federal habeas corpus claim, alleging the eleven grounds for relief which he had set forth in his state motion for post-conviction relief, including claims that he had received ineffective assistance of counsel at the time of his guilty plea because his counsel had failed to adequately investigate his mental state and because his counsel had a conflict of interest. Pool further alleged that he was denied access to the courts for the purposes of prosecuting his state post-conviction relief proceedings. In October 1982, Pool filed another federal habeas corpus petition, which the district court consolidated with Pool's previous habeas action. The consolidated actions were referred to United States Magistrate David Noce for review and recommended disposition. After considering Pool's twelve asserted grounds for relief, Magistrate Noce concluded that Pool had received a full and fair evidentiary hearing on his claims in state court. The magistrate agreed with the state court that Pool's claims were without merit, and therefore recommended that Pool's petitions be denied without further proceedings. The district court sustained the Magistrate's Report and Recommendation on May 7, 1985.

On July 7, 1985, Pool appealed the district court's decision. He also filed an application for leave to file an untimely appeal and an application for certificate of probable cause. The district court denied Pool's applications, and this court affirmed. Pool then filed a motion to vacate the district court's judgment under Fed.R.Civ.P. 60(b), arguing that the state prison officials had interfered with his ability to appeal by failing to get his mail to him. This request was also denied. The United States Supreme Court subsequently denied Pool's petition for certiorari.

Pool then brought this habeas corpus action, alleging two claims: 1) state officials interfered with his ability to perfect an appeal in his habeas corpus and Rule 60(b) claims; and 2) the attorney representing him at the time of his guilty plea had a

---

**1.** The Honorable William L. Hungate, United States District Judge for the Eastern District of Missouri.

conflict of interest. The district court dismissed Pool's petition, determining that the conflict of interest claim had been raised and decided on its merits in Pool's previous habeas actions. The district court further determined that while the claim regarding interference by state officials with Pool's access to the courts might support a civil rights action under 42 U.S.C. § 1983, it would not merit relief as a habeas corpus action under 28 U.S.C. § 2254.

Pool brings this appeal, alleging that the district court erred in dismissing his petition. In addition, Pool asserts a third claim —that his counsel was ineffective for failing to seek an independent psychiatric examination for him prior to his guilty plea.

## II.

■ Pool's first claim on appeal is that state officials interfered with his ability to appeal the denials of his previous habeas corpus action and his Rule 60(b) motion. Specifically, Pool alleges that the state prison officials failed to inform him during the appeal period of his habeas action that his claims had been denied. He further alleges that the prison officials at the mail center held his outgoing notice of appeal of the denial of his Rule 60(b) motion until the time for appeal had passed. The district court determined that these were not proper habeas corpus claims, but rather were § 1983 civil rights claims.

Pool argues that the district court misconstrued the relief he seeks. Pool is not seeking damages caused by interference from state officials; rather, he wants this court to recognize that he was unfairly deprived of the opportunity to pursue fully his previous habeas appeal and consequently wants to be allowed to bring the claims again.

We agree with Pool that his claims are properly cognizable in a habeas corpus action. The Supreme Court has made clear that habeas corpus is the proper remedy for a prisoner who is challenging the very fact or length of confinement, and who is seeking an immediate or speedier release from imprisonment. *Preiser v. Rodriguez*, 411 U.S. 475, 500, 93 S.Ct. 1827, 1841–42,

36 L.Ed.2d 439 (1973). The basis of this action is Pool's claim that the acts of the state prison officials in interfering with the appeal of his previous habeas action had the effect of denying or delaying Pool's release from confinement. Therefore, Pool's challenge goes to the very fact of his confinement, which is a proper habeas claim.

■ Because no evidence was presented to the district court on Pool's claim regarding the interference by state prison officials with his previous habeas appeal, an evidentiary hearing would be necessary to determine the validity of Pool's allegations. However, we note that even if Pool prevailed on his claim regarding interference by the prison officials, in order to merit habeas relief Pool would have to show that he was prejudiced by the prison officials' acts. In other words, Pool must show that his previous habeas appeal had merit and would have been successful. The parties agree that this court has before it now in the record all the evidence relevant for determining whether Pool's previous habeas appeal had merit. We therefore carefully consider this record, which includes the Magistrate's Report and Recommendation from Pool's previous habeas action and the transcript and state court findings from the hearing on Pool's Rule 27.26 motion, to determine whether Pool would have been entitled to relief on his previous habeas appeal. If Pool would not have been entitled to such relief, there is no need for an evidentiary hearing on his claim regarding the interference by state prison officials.

## III.

In Pool's previous habeas action, he asserted twelve grounds for relief. In this action Pool argues only two of these grounds, both of which relate to the alleged ineffective assistance of his counsel at the time of his guilty plea. Pool's first argument is that his counsel was ineffective because she had a conflict of interest. Pool's second argument is that his counsel was ineffective for failing to thoroughly investigate his mental state for purposes of

pursuing the defense of not guilty by reason of mental defect. Although the state court and Magistrate Noce both considered and rejected these claims, Pool argues that their findings were erroneous. Pool contends that he did not get a full and fair evidentiary hearing before the state court, and that therefore the magistrate should have held an evidentiary hearing before recommending that Pool's habeas petition be dismissed.

■ With regard to his conflict of interest claim, Pool asserts that the conflict arose when Pool's attorney, the public defender, hired into her office Kerry Kobaldt to be an assistant public defender. Kobaldt had been the prosecutor who had originally filed the first degree murder charges against Pool, and who had then refiled them as capital murder charges. During the pendency of the proceedings against Pool, Kobaldt had lost his bid for re-election as prosecutor and was hired into the public defender's office.

In order to establish a violation of his sixth amendment right to effective assistance of counsel, Pool must show that his counsel's performance was deficient and that Pool's defense thereby was prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A counsel's representation is deficient if it falls "below an objective standard of reasonableness." *Id.* at 687–88, 104 S.Ct. at 2064–65. *See also Nance v. Benson,* 794 F.2d 1325, 1327 (8th Cir.1986). "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland, supra,* 466 U.S. at 689, 104 S.Ct. at 2065. Prejudice is presumed where a petitioner establishes that his counsel had an actual conflict of interest which adversely affected the counsel's performance. *Id.* at 692, 104 S.Ct. at 2067.

Pool does not argue that his counsel had an actual conflict of interest, nor is there any evidence of such in the record. As the magistrate in Pool's previous habeas proceeding found, Pool's attorney did not discuss Pool's case with Kobaldt after Kobaldt joined the public defender's office, nor did Kobaldt work on Pool's case after leaving the prosecutor's office. There is no evidence in the record that Kobaldt in any way influenced Pool's attorney in her representation of Pool after Kobaldt joined the public defender's office.

■ Absent an actual conflict of interest, Pool must establish that his counsel was ineffective under the two-pronged *Strickland* test. *See Wright v. Minnesota,* 833 F.2d 746, 749 (8th Cir.1987) (per curiam), *cert. denied,* —— U.S. ——, 108 S.Ct. 1481, 99 L.Ed.2d 709 (1988). We do not find that Pool's counsel's conduct in representing Pool after Kobaldt was hired as an assistant public defender fell below an objective standard of reasonableness. Therefore, we do not reach the question of prejudice. Pool's assertion that the mere appearance of impropriety is sufficient to establish ineffective assistance of counsel is without legal basis.

IV.

■ Pool's second contention presents a more difficult question. Pool argues that his counsel was ineffective for failing to thoroughly investigate his mental state in order to pursue the defense of not guilty by reason of mental defect. As noted previously, to establish a claim of ineffective assistance of counsel, Pool must establish that his attorney's representation was deficient and that Pool thereby suffered prejudice. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. Therefore, the question presented here is whether, under the circumstances, Pool's counsel's conduct in failing to seek an independent psychiatric examination fell below an objective standard of reasonableness.

The record reveals that in addition to a court-ordered psychiatric examination, Pool was subject to two additional mental examinations prior to his guilty plea. The first was performed in February 1978, in order to assist the juvenile court in determining whether Pool should be certified to be tried as an adult. The clinical psychologist evaluating Pool recommended that Pool be so certified, finding that while Pool had an antisocial personality disorder, he was

"competent to cooperate in his defense and free of mental disease or defect that would prevent him from being responsible for his behavior."

In August 1978, Pool was admitted to the Fulton State Hospital for the court-ordered psychiatric examination. The examination had been sought by Pool's attorney's predecessor in the public defender's office, who had filed a notice that Pool would rely on the defense of mental defect. Prior to the court-ordered examination, a preliminary psychological examination was performed on Pool at the hospital on August 3–4, 1978. The examining psychologist found that Pool had "good reality contact." He stated that Pool had attempted to exaggerate during the testing in hopes of being viewed as mentally ill.

Finally, Pool was examined pursuant to the court order by Dr. Sadashiv Parwatikar at the Fulton State Hospital on August 20, 1978. Although noting that Pool engaged in "inappropriate laughter," Dr. Parwatikar found that Pool did not have a mental disease or defect as defined under Missouri law, he was capable of assisting in his own defense, and he knew the nature and wrongfulness of his acts and was capable of conforming them to the requirements of the law.

Pool now argues that Dr. Parwatikar's opinion is unreliable because at the time of the examination Pool was on a drug, Thorazine, which affected his mental state. At the state court Rule 27.26 hearing, Dr. Parwatikar stated that at the time of Pool's examination, he did not know whether Pool had been administered Thorazine. However, he testified that even if Pool had been given Thorazine, it would not have affected his evaluation of Pool. Dr. Parwatikar testified that Thorazine is a tranquilizer that is used to sedate, and that it may slow down the thought processes, but does not otherwise affect them.

Pool raised this ineffective assistance of counsel claim before the state court in his Rule 27.26 motion, arguing that his attorney should have investigated his mental state more thoroughly. The court rejected his claim, largely discussing the testimony

of Dr. Parwatikar. The state court also noted that there was no evidence that Pool was imcompetent at the time he entered his guilty plea.

The magistrate also rejected this claim in Pool's previous habeas action. The magistrate discussed the testimony of Dr. Parwatikar and noted that Pool testified at the Rule 27.26 hearing that he and his attorney had discussed the possible defense of mental defect. The magistrate additionally pointed to Pool's attorney's testimony at the Rule 27.26 hearing that Pool never exhibited to her any reason to doubt his competency. Finally, like the state court, the magistrate found that there was no indication that Pool was incompetent when he made his guilty plea.

After carefully reviewing the record in this case, we find the question of whether Pool's attorney rendered ineffective assistance of counsel for failing to seek an independent psychiatric examination to be a close one. We note that Pool was only 15 years old at the time of the murder, and that he only had a seventh grade education. Pool had exhibited a history of violent behavior and had a below average intelligence. In 1975, Pool had spent six months in the Fulton State Hospital. We think it is important to note also that, considering the overwhelming evidence against Pool, his best defense had he gone to trial would have been mental defect.

On the other hand, we note that Pool underwent mental examinations by two psychologists and a psychiatrist, all of whom found him to be free of mental defect. Although Pool claims that Dr. Parwatikar's examination is unreliable because he was on Thorazine, Dr. Parwatikar said his opinion would have remained unchanged even if Pool had been given Thorazine. Further, Pool failed to present any evidence that he was under the effect of Thorazine on the day of the examination. The hospital reports which are in the record indicate Pool was given Thorazine only on August 15 and 16, 1978, while the examination by Dr. Parwatikar was on August 20, 1978.

We realize that the three mental examinations of Pool were all performed by state-related doctors. However, there is no evidence in the record that a fourth examination, even if done by an independent examiner, would have resulted in a different opinion as to Pool's mental state. There was no evidence presented that the three previous reports were defective. Consequently, we find that Pool's counsel's conduct in representing him did not fall below an objective standard of reasonableness when, after three doctors found Pool free from mental defect, she failed to seek a fourth, independent psychiatric examination for Pool.

Pool also fails to prove the second requirement of the *Strickland* test, namely, that even if his counsel's performance was deficient, he was prejudiced by such deficiency. *Strickland, supra,* 466 U.S. at 687, 104 S.Ct. at 2064. In order to satisfy this requirement, Pool must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59, 106 S.Ct. 366, 370–71, 88 L.Ed.2d 203 (1985) (footnote omitted). Pool has not shown that had his attorney sought an independent examination, he would have insisted on going to trial. As previously noted, Pool has not shown that an additional psychiatric examination probably would have produced an opinion different than the opinions reached in the three previous examinations. Even if the additional examination had produced an opinion that Pool had a mental defect, Pool has not shown that he probably could have been successful with a defense of mental defect in light of the three other examinations. *See id.* Therefore, we find that Pool has not shown either that his counsel's performance was deficient, or that he was prejudiced by any such deficient performance with regard to the investigation of his mental state.

Although he does not argue them before this court, Pool presented several other claims in his previous habeas action. We have carefully reviewed the record, including the Magistrate's Report and Recommendation, and find these claims to be without merit.

We conclude that Pool would not have been successful in the appeal of his previous habeas corpus action. Our decision obviates the need to remand this case to the district court for an evidentiary hearing regarding Pool's claim of interference with his appeal rights by state prison officials. Consequently, the decision of the district court to dismiss Pool's habeas corpus petition is affirmed.