GREGORY AWANA, Petitioner-Appellant,
v.
STATE OF HAWAI`I, Respondent-Appellee
No. 28999
Intermediate Court of Appeals of Hawaii
February 25, 2009.
On the briefs:
Karen T. Nakasone, Deputy Public Defender, for Petitioner-Appellant.
Donn Fudo, Deputy Prosecuting Attorney, City and County of Honolulu, for Respondent-Appellee.

SUMMARY DISPOSITION ORDER
RECKTENWALD, C.J., WATANABE and FOLEY, JJ.
Petitioner-Appellant Gregory Awana (Awana) appeals from the "Findings of Fact, Conclusions of Law and Order Denying Petitioner Gregory Awana's Petition for Relief Pursuant to Rule 40, Hawaii Rules of Penal Procedure" (Order) filed on January 18, 2008 in the Circuit Court of the First Circuit (circuit court).[1] Awana filed his petition for post-conviction relief (Rule 40 Petition) on February 8, 2006 pursuant to Hawai`i Rules of Penal Procedure (HRPP) Rule 40.
In the underlying criminal case, a jury found Awana guilty of:
Count I, Murder in the Second Degree (Hawaii Revised Statutes (HRS) §§ 707-701.5 (1993) and 706-656 (1993 & Supp. 2008));
Count II, Carrying, Using or Threatening to Use a Firearm in the Commission of a Separate Felony (HRS § 134-6(a) (Supp. 2005));
Count III, Unauthorized Control of Propelled Vehicle (HRS § 708-836 (Supp. 2008));
Count IV, Criminal Property Damage in the Second Degree (HRS § 708-821 (1) (a) (Supp. 2005));
Count V, Commercial Promotion of Marijuana in the First Degree (HRS § 712-1249.4 (1993)); and
Count IV, Unlawful Use of Drug Paraphernalia (HRS § 329-43.5(a) (1993)).
The circuit court sentenced Awana to life imprisonment with the possibility of parole, with a mandatory minimum term of fifteen years on Count I; twenty years of imprisonment on Counts II and V; and five years of imprisonment on Counts III, IV, and VI, all terms to be served concurrently, and filed its Judgment of Conviction and Sentence on February 22, 2005 .
In the direct appeal of his conviction, Awana contended that the circuit court erred in: (1) denying his motion to suppress his involuntary tape-recorded statement to the police; (2) sustaining objections to questions asked by his counsel on cross-examination; (3) permitting a detective to testify that Awana's friend (Mau) said he had not loaned his boat to Awana; (4) admitting photographs of Mau's boat without adequate foundation that the photographs depicted the boat Awana said he had used to dispose of the victim's body; (5) refusing to dismiss the charge of first degree commercial promotion of marijuana; (6) allowing a criminalist to testify about the water content and dehydration of marijuana plants where no adequate foundation had been laid that the criminalist had expertise in those areas; and (7) denying his motions for judgment of acquittal on the charge of second degree murder.
On July 5, 2005, during the pendency of the direct appeal and approximately seven-and-a-half months after Awana's conviction, an anonymous person called the circuit court, claiming to be the brother-in-law of a juror (Juror) at Awana's trial and stating that Juror had reported hearing voices during the trial, was afraid of Judge Aim during the trial, and had been hospitalized in the psychiatric unit at Castle Medical Center (CMC) from June 17 to June 25, 2005.
On February 8, 2006, Awana filed his Rule 40 Petition, in which he alleged that his conviction should be set aside because the judgment was obtained in violation of federal and state constitutions, where there was newly discovered evidence to form the basis for a collateral attack on his conviction. Specifically, Awana contended that because Juror might be schizophrenic or have other psychosis, it was reasonable to conclude that Juror's condition was symptomatic during trial and that Awana, therefore, was denied his constitutional right to mentally competent jurors.
At the circuit court's request, Awana subpoenaed on May 25, 2006 Juror's psychiatric records from CMC for the court and the parties' review. Awana and the State of Hawai`i (State) submitted memoranda on whether the circuit court should hold an evidentiary hearing on Juror's mental capacity at time of trial (mental capacity).
On April 13, 2007, in a Memorandum Opinion in Appeal No. 27145, this court affirmed Awana's conviction.
On July 20, 2007, the circuit court heard argument on whether an evidentiary hearing should be held on Juror's mental capacity.
On January 18, 2008, the circuit court filed its Order, denying Awana's request for an evidentiary hearing on Juror's mental capacity and Awana's Rule 40 Petition.
On appeal, Awana contends the circuit court was wrong when it:
(a) denied his Rule 40 Petition without an evidentiary hearing, where the court erroneously minimized the severity of Juror's mental illness;[2]
(b) held that Awana failed to establish a colorable claim and applied the wrong standard of review for the Rule 40 hearing;[3]
(3) relied on United States v. Diocruardi, 492 F. 2d 70 (2d Cir. 1974), in concluding that an evidentiary hearing was not required;[4]
(4) applied Hawaii Rules of Evidence (HRE) 606(b) to preclude the type of juror inquiry Awana requested.[5]
Awana asks this court to vacate the Order and remand this case with instructions to hold an evidentiary hearing on his Rule 40 Petition.
Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Awana's points of error as follows:
The circuit court was not wrong in denying Awana's Rule 40 Petition without an evidentiary hearing. In Dioguardi, the United States Court of Appeals for the Second Circuit set forth the following rule:
It is well settled that only clear evidence of a juror's incompetence to understand the issues and to deliberate at the time of his service requires setting aside a verdict. And only strong evidence that it is likely that the juror suffered from such incompetence during jury service will justify an inquiry into whether such incompetence in fact did exist.
492 F.2d at 78 (emphasis added). The Second Circuit further stated:
With respect to post-verdict evidence of possible juror incompetency during the trial, courts have refused to set aside a verdict, or even to make further inquiry, unless there be proof of an adjudication of insanity or mental incompetence closely in advance of the time of jury service. Only when proof of this nature has been offered, or proof of a closely contemporaneous and independent posttrial adjudication of incompetency, have courts conducted hearings to determine whether the disability in fact affected the juror at the time of trial.
But absent such substantial if not wholly conclusive evidence of incompetency, courts have been unwilling to subject a juror to a hearing on his mental condition merely on the allegations and opinions of a losing party.
Id. at 80 (footnotes omitted; emphases added).
We adopted this rule in State v. Laeda, No. 27134, 2006 WL 3411853, at *5 (Hawai`i App. Nov. 28, 2006), cert. denied, 114 Hawai`i 55, 155 P.3d 1156 (2007), and held that the defendant was not entitled to a new trial based on the purported incompetence of one of the jurors, where the proffered evidence did not demonstrate "clear evidence of incompetence," but fell "far short of the `strong evidence' of incompetence necessary to merit a further inquiry," id. at *6 (citation omitted); the circuit court questioned the juror during deliberations and polled him individually post-verdict, both times concluding that the juror was competent to participate in deliberations, id.; counsel for both parties observed the questioning and were afforded the opportunity to participate, id.; and the record did not otherwise indicate that the juror was incompetent, unable to understand the proceedings, and unable to participate in deliberations. Id. at *7
Similarly, Awana's proffered evidence fails to rise to the high level of "proof of an adjudication of insanity or mental incompetence." See id. at *5 (quoting Dioguardi, 492 F.2d at 80). Specifically, Awana relies on (1) CMC records of Juror's stay at CMC's psychiatric unit about six-and-a-half months after the trial and (2) the anonymous phone call received seven-and-a-half months after Awana's conviction, alleging, inter alia, that Juror had heard voices during the trial. Notwithstanding the significant time lapse, neither evidence provides "substantial if not wholly conclusive evidence of [Juror's] incompetency" during the trial, as needed to justify further inquiry. See Dioguardi, 492 F.2d at 80.
To the contrary, the record substantially indicates that Juror was a competent juror at the time he rendered his jury service. The circuit court questioned Juror during voir dire, individually and as part of the jury panel, and polled him individually post-verdict. Furthermore, counsel for both parties observed the court's questioning and questioned Juror directly during the jury selection process. Where the record does not otherwise indicate that Juror was incompetent, unable to understand the proceedings, or unable to participate in deliberations during Awana's trial, we hold that FOFs/COLs 32, 35, 36, 39 through 42, and 44 through 54 were not erroneous or wrong and that the circuit court, therefore, was not wrong in denying Awana's Rule 40 Petition without an evidentiary hearing.
Therefore,
The "Findings of Fact, Conclusions of Law and Order Denying Petitioner Gregory Awana's Petition for Relief Pursuant to Rule 40, Hawaii Rules of Penal Procedure" filed on January 18, 2008 in the Circuit Court of the First Circuit is affirmed.
NOTES
[1] The Honorable Steven S. Aim presided.
[2] With respect to this contention, Awana challenges the following four Findings of Fact (FOFs)/Conclusions of Law (COLs) contained in the Order:

32. Based upon the CMC records, the Court believes that [Juror] was likely having mental health issues at the time he was admitted to CMC in June 2005.
....
35. Notably, the information and descriptions concerning [Juror] contained within the CMC records related to his condition and behavior some seven-and-a-half months following his jury service and are a stark contrast to the observations of [Juror's] conduct, behavior and interaction with others during the instant trial.
36. In the Court's view, these descriptions of [Juror] during his stay at CMC several months after he had apparently and capably served as a qualified juror in this case do not suggest or prove that he was suffering from similar mental health issues at the time he rendered his jury service.
....
39. Despite [Juror's] apparent mental health issues and hospitalizations in June 2005, there is absolutely nothing which indicates that he was similarly affected during his jury service or that he was otherwise unable to be a fair, impartial and competent juror in this case.
[3] As to this contention, Awana challenges the following three FOFs/COLs:

40. In the Court's view, it is not reasonable to conclude based upon the information and claims provided by the anonymous caller, coupled with the information and descriptions contained in the CMC medical records, that [Juror] was mentally incompetent when he served as a trial juror here.
41. In the absence of compelling evidence suggesting that he was mentally incompetent contemporaneous with the trial, this Court must find and conclude that [Juror] served as a capable and competent trial juror in this case.
42. To do otherwise would require the Court to engage in rank speculation.
[4] As to this claim, Awana challenges the following eight FOFs/COLs:

44. The Court is mindful that the law does not generally favor post-trial inquiries into a juror's state of mind. United States v. Dioguardi, 492 F.2d [] at 80.
45. There are "many cogent reasons militating against post-verdict inquiry into jurors' motives for decision," as well as, weighty policy considerations supporting the finality of jury verdicts and the fact that jurors "ought not be subjected to [post-trial] harassment." Id.
46. This Court finds the Dioguardi case whose essential holding on this issue was recently cited and adopted by the Hawai`i Intermediate Court of Appeals ("ICA") in State v. Laeda, S.C. No. 27134, slip op. (Ct. App. November 28, 2006), ___ P.3d ___ (2006), to be instructive in this case.
47. In Dioguardi, the appellate court affirmed the trial court's refusal to allow any further inquiry into the issue of the juror's possible incompetence during trial, noting that:
[w]ith respect to post-verdict evidence of possible juror incompetency during the trial, courts have refused to set aside a verdict, or even to make further inquiry, unless there be proof of an adjudication of insanity or mental incompetence closely in advance of the time of jury service. Only when proof of this contemporaneous and independent post-trial adjudication of incompetency, have courts conducted hearings to determine whether the disability in fact affected the juror at the time of trial. [sic]. . . [A]bsent such substantial if not wholly conclusive evidence of incompetency, courts have been unwilling to subject a juror to a hearing on his mental condition merely on the allegations and opinions of a losing party.
Id. at 80 (emphases added). (Accord United States v. Mauldin, 714 F.2d 854 (8th Cir. 1983), United States v. Lockhart, 768 F.2d 252 (8th Cir. 1985) ("We have cautioned that post-trial inquiries into a juror's state of mind are not favored, and that a high standard of proof is required when an allegation of juror incompetence is made. A petitioner is entitled to a hearing only if he produces substantial evidence of incompetence such as proof of an adjudication of insanity or mental incompetence made shortly before or after trial."))
48. Dioguardi dealt with a situation where a scant ten days after the trial, indications were that one of the trial jurors was then suffering from a serious mental disorder. Notwithstanding the proximity in time relative to the trial that this issue arose, the trial court disallowed any further inquiry concerning the juror's competency. Id.
49. By comparison, in the instant case, the evidence concerning [Juror's] mental incompetency is well beyond a few days after trial and is instead, many months later. Accordingly, this Court finds this evidence relating [to Juror's] stay at CMC and his other reported problems in June 2005 to be significantly attenuated from the jury service he rendered at trial.
50. In this case, the Court agrees with the State that this evidence does not rise to the level of "an adjudication of insanity or mental incompetence made shortly or after trial."
51. As such, the Court finds and concludes that the facts and circumstances of the instant case do not justify the post-verdict inquiry, sought by [Awana], concerning [Juror's] mental competency at the time of trial.
[5] With regard to this claim, Awana challenges the following three FOFs/COLs:

52. In addition, the Court also finds that such a post-verdict inquiry of the type sought by [Awana] here would appear to run afoul of [HRE] Rule 606(b).
53. Based upon the plain and unambiguous language of [HRE] Rule 606(b), . . . and the interpretation of the rule as set forth by applicable decisions of both the Hawaii Supreme Court and the ICA, this Court finds and concludes that the proposed testimony of [Juror] would be inadmissible under the rule. See Laeda, supra at ___, State v. Kim, 103 Haw. 285 (2003) [sic].
54. Accordingly, this Court denies [Awana's] request to conduct further inquiry of [Juror].